## Case No. 894.

### In re BANK OF NORTH CAROLINA.

#### Ex parte WILSON et al.

[2 Hughes, 369; 10 N. B. R. 289, 290.]

District Court, E. D. North Carolina. 1874.[1]

BANKRUPTCY—STATE BANKS — RIGHT TO INTEREST ON BANK BILLS.

[A creditor holding bank bills of a state bank adjudged a bankrupt is entitled to interest thereon only from the time of filing proofs in bankruptcy, where no demand for payment has been made by him, and there is no evidence of when the bank bills came into his possession.]

In bankruptcy. The register (A. W. Shaffer) reported as follows: Question First. Are the creditors who have proved their claims against the foregoing estate, the principal of which has been paid in full, entitled to interest upon said proofs until the same were paid in full? Second. If the creditors are so entitled, shall the same be computed from the date of suspension of specie payment by the bank? Or, from the actual date of possession and ownership of the bills? Or, from the date of commencement of proceedings in bankruptcy? Or, from the date of filing the bills and proof of the debt before the register, and at what rate? And the said parties requested that the same should be certified to the district judge for his opinion thereon, and I do so certify the same. Inclosed herewith is a tabular statement, showing the dates and amounts of the proofs and nature of debt, by Wilson & Shober, and the dates and amounts of the respective dividends thereon, together with the briefs and authorities cited upon the subject of this claim.

Data: On the 31st day of October, 1868, was filed the petition upon which the Bank of North Carolina was, on the 5th day of November, 1868, duly adjudicated bankrupt. On the 7th day of December, 1868, was held the first meeting of creditors, whereat was proven debts amounting to two hundred and nine thousand two hundred and twenty-two dollars and fifteen cents, and Charles Dewey chosen assignee, and received assignment of the bankrupt's estate. Four several dividends have been declared on said estate, the fourth and last of which was made February 3d, 1874, and on all the debts proven up to this date, amounting in the aggregate to three hundred and twelve thousand one hundred and eighty dollars and eighty-four cents, there has been paid one hundred per cent., and there still remains in the hands of the assignee a surplus of about thirty thousand

[1] [Reversed in Case No. 895.]

dollars, together with various suits pending and undetermined upon claims due to the assignee, for upward of forty thousand dollars more. No limitation has been set to the proof of debt, and small amounts of the bills of the corporation come in for proof at intervals. All which is respectfully submitted, this 4th of February, 1874.

Thomas B. Keogh, for Wilson & Shober.
B. F. Moore, for the assignee therein.

BROOKS, District Judge. Wilson & Shober, the creditors at whose instance this question was certified, were, as they allege, holders of a large amount in the bills of the bankrupt corporation, which were in the usual form of bank notes. The corporation was duly declared bankrupt on its own petition, on the 5th day of November, 1868. The first meeting of creditors was held on the 7th day of December, 1868, at which meeting Charles Dewey was chosen assignee, to whom a proper assignment was duly made. At said meeting, debts were proved against the estate amounting to the sum of two hundred and nine thousand two hundred and twenty-two dollars and fifteen cents, and the evidences of debt filed, much the largest portion of which consisted in the circulating notes of the bank, payable on demand. The complaining creditors filed proofs of debt at various times, the first, on the 5th of December, 1868, for two hundred dollars, the second, on the 31st of January, 1870, for thirty-eight thousand eight hundred dollars, more than twelve months after the filing of the first proof. More than twelve months after the filing of the second proof, a third proof was filed, amounting to three thousand eight hundred dollars; amounting altogether to the sum of forty-six thousand four hundred and sixty dollars. From these proofs and the notes filed therewith it appears affirmatively that this entire indebtedness of the bank was for the notes or circulating medium of the bank, payable as before stated. It appears further, that three several dividends were declared and paid to creditors: the first on the 24th of February, 1870, of fifty-five per cent.; the second, on the 19th of January, 1871, of thirty-five per cent.; and the third, on the 9th day of April, 1872, of ten per. cent., amounting in all to the sum of three hundred and twelve thousand one hundred and eighty dollars and eighty-four cents. It is thus shown that these complaining creditors have received the full face value, or one hundred cents for every dollar, of the bills of the bank proved by them. Rare as this result is in the practical working of any bankrupt law, American or foreign, fortunate as all the creditors have been, these creditors are not yet satisfied, but they complain that they have not been paid interest on the forty-six thousand four hundred and sixty dollars, from some day in the year 1861, when, they say, the Bank of North

Carolina refused to pay specie in the redemption of its notes. They allege that there is still a large surplus in the hands of the assignee, out of which they are entitled by law to be paid interest from some day in 1861 to the date of the last dividend on this debt. They say, secondly, that if they are not so entitled, they are yet entitled to interest from the date of the commencement of proceedings in bankruptcy. Thirdly. If this be not correct, they are entitled to interest from the day of the order of adjudication of bankruptcy; and finally, otherwise failing, they claim interest from the date of actual proof and filing before the register.

As to the first position taken by the complaining creditors, it needs only to be stated, and the absurdity of the claim sufficiently appears. If Shylock would have his pound of flesh, he should know that it must only be in strict fulfilment of the contract. What, then, was the obligation of the bank in regard to the payment or redemption of the bills proved by these creditors? It was simply this, that the bills or notes should be paid whenever presented or demanded at its office, at a place designated on the face of each note, and to such person as may make such demand. Was any demand ever made by any holder of the notes proved by these creditors? There is no evidence, nor even allegation, that any demand was ever made. We have the right, and indeed it is our duty, to presume that they held but two hundred dollars of these bills on the 5th of December, 1868, for why should they prove and file but two hundred dollars, if. at that time they were the holders of forty-six thousand dollars of the bills of the bank? Whenever they may have become possessed of any of the bills of the bank, could they not have presented the same and demanded payment? Certainly they could; and if the notes so presented had not been then and there paid, it would have been the privilege of such holder to cause the same to be protested; and immediately such notes would not only become interest-bearing obligations of the bank, but such holder would have acquired the right to sue, and recover from the bank the amount of the bills so presented, and the interest from the date of such demand. And moreover, damages, provided expressly in the charter of the banks. What were these bank bills in the hands of these money-dealers? They were money in the sense in which bank notes payable to bearer are distinguishable from property. They bought them as money, and if they held them all before they filed them with their proofs of debt, they held them as money. It was their business to deal in money, current and uncurrent, and especially the uncurrent. It is not necessary for me to say whether the obligation of the holder to present for and demand payment at the place designated in the bills would be necessary, if at the time the corporation had ceased to do business at the place so designated; if it had closed its office and ceased to redeem on any terms its notes, for it is not my duty to decide hypothetical questions.

If bank bills be presented and payment demanded and refused, then, as before stated, the holder may cause protest to be made. Such demand and non-payment entitles such holder to sue for the amount of the bills and damages. The right to sue thus acquired is personal, and belongs exclusively to such holder. He may sell or pass to another the bills so protested, but so soon as he does so they become again a circulating medium, and the person who so receives them acquires no right by virtue of the previous demand and protest, but only such right as belongs to any ordinary holder. I do not mean to say that the holder of any interest-bearing obligation has not the same right to require payment of principal and interest from an estate of a bankrupt, if there should be sufficient to pay principal and interest, as such holder would have against an individual or corporation not in bankruptcy; but in neither case would the holder of non-interest-bearing notes be entitled to any sum beyond the face value of the bill until a demand, or refusal, or omission to pay by the debtor. In case of bank notes, it is especially required, to constitute a sufficient demand, that the person demanding payment should show at the place that he is prepared to surrender the bills or evidences of debt. I hold that the proofs in this case, as they are filed, as regards the time and amount, are equivalent to a demand, to the extent of entitling each creditor so proving to the full sum so proved, and interest at the rate of six per cent. per annum from the date of filing such proofs to the date of declaring the first dividend, then at the same rate on the balance of the principal sum to the date of declaring the second dividend, and in the same way until the principal and interest is paid.

And it is referred to A. W. Shaffer, Esq., register, to compute the interest due upon each proof according to the rule here prescribed. And if, upon such computation being made, it shall appear that the fund now in the hands of the assignee is insufficient to pay the whole sum to the creditors for interest, then such creditors shall be entitled to and paid such interest pro rata.

[NOTE. For opinions in subsequent course of same litigation, see In re Bank of North Carolina, Cases Nos. 895-897.]